**C & S MANUFACTURING CORPO-RATION, a Wisconsin corporation, Plaintiff–Appellant,**

v.

**UNITED STATES FIRE INSURANCE COMPANY, a New York corporation, Defendant–Appellee.**

No. 92–1746.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 8, 1992.

Decided May 21, 1993.

Wesley Kennedy, Robert H. Nichols (argued), Cotton, Watt, Jones & King, Chicago, IL, for plaintiff-appellant.

James P. O'Neill, Timothy L. Lyons (argued), O'Neill, Schimmel, Quirk & Carroll, Milwaukee, WI, for defendant-appellee.

Before CUDAHY and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

CUDAHY, Circuit Judge.

In December 1986, C & S Manufacturing Corp., a Wisconsin corporation, bought a model A36 Beechcraft Bonanza aircraft manufactured by Beech Aircraft Corp. C & S also purchased an insurance policy from United States Fire Insurance Co., a New York corporation, to cover the aircraft. That policy provided that

> [i]f your aircraft is damaged, we will pay the reasonable cost of repair after the aircraft is repaired, but we will not pay more than the agreed value less the applicable deductible.
>
> .     .     .     .     .
>
> Cost of repairs includes necessary labor at straight time rates, parts and materials of similar kind and quality and the least expensive transportation charges necessary to the repair of your aircraft and its return to the place where the damage occurred or the home airport whichever is nearer.

The president of C & S, a licensed pilot, was flying the aircraft over Washington state on June 8, 1988, when an unspecified incident occurred during which the aircraft suffered substantial structural damage, including extensive damage to its wings. It is uncontroverted that the type of damage was within the scope of the insurance policy's language.

The aircraft was transported to Flightcraft, Inc., a maintenance and repair facility in Seattle. During the course of repair, Beech, the aircraft's manufacturer, concluded that the way the wings were attached did not satisfy its manufacturing standards. As a result, even though the aircraft was no longer under warranty, Beech offered to replace the wing-box assemblies at no cost, and C & S accepted. Flightcraft's invoice for the

work indicated the repairs totaled $40,854; its service manager stated that that amount represented the most accurate estimate of the cost that would have been incurred in repairing the wings if Beech had not replaced them.

C & S filed suit in federal court against U.S. Fire in July 1989, asserting diversity jurisdiction. Of the five counts contained in the complaint, four were resolved by the parties and accordingly dismissed with prejudice in an order entered on March 21, 1990. In the remaining count, C & S charges that U.S. Fire is liable to C & S for the cost of repairing the wings, even though Beech replaced them for free, because that cost was part of the "reasonable cost of repair" covered in the policy.

C & S moved for summary judgment on the remaining count. On March 3, 1992, the district judge denied that motion and instead granted summary judgment for U.S. Fire. C & S appeals.

## I.

We review the district court's grant of summary judgment *de novo*. Specifically, this appeal requires us to ascertain whether the defendant's commitment under C & S's aviation insurance policy to pay the "reasonable cost of repair" of any damage to the aircraft obligates them in this case to pay the amount C & S would have been charged had Beech not replaced the wings free of charge.

The district court found that the coverage provision was ambiguous because it did not state whether the plaintiff must actually incur the cost of repair to recover under the policy. Order at 4. But despite the general rule that ambiguities should be resolved against the insurer, the district court construed the policy language so as not to provide coverage to avoid an unreasonable result. Order at 5.[1] The court therefore denied C & S's motion for summary judgment and entered judgment in favor of U.S. Fire.

■ Although we agree with the district court's ultimate conclusion, we would reach it by a somewhat different course. In particular, we do not believe the policy language is ambiguous as to this matter. In our view, the amount at issue does not constitute a "cost of repair" under any reasonable interpretation of the policy language.[2]

Case law interpreting the term "cost" in a relevant context is sparse. No Wisconsin case that we found addressed this narrow issue. One unpublished limited precedent opinion, *Master Hearing Aid Plan of Milwaukee v. Department of Health & Social Services*, 1988 WL 148387, 1988 Wisc.App.LEXIS 1096 (Ct.App.), noted in a context unrelated to the cost of repair that "the word 'cost' refers to an actual expenditure, which may or may not equate with the list price." *Id.* at *1, 1988 Wisc.App.LEXIS 1096, at *3.[3] And although it is not necessarily dispositive on the facts before us, C & S clearly made no actual expenditure pertaining to the repair of the aircraft. Moreover, based upon the common understanding of the term "cost," this policy constitutes a contract to pay the amount *the insured* was otherwise responsible for paying. C & S was at no point obligated—either conceptually or actually—to pay the amount at issue. U.S. Fire agreed under the policy to "pay" the "cost" of repair, but here, the repair was provided at no cost and we can identify no cost for U.S. Fire to pay. A plain reading of the policy compels us to conclude that the amount that C & S would have had to pay to

---

1. The district court relied primarily on the Wisconsin Supreme Court case *Kopp v. Home Mutual Ins. Co.*, 6 Wis.2d 53, 94 N.W.2d 224 (1959), which reasoned that permitting an insured to recover for services supplied by a third-party volunteer without cost or liability to the insured would be an unreasonable result. 6 Wis.2d at 57–58, 94 N.W.2d 224.

2. One may argue that the repair bill was a "cost" at the time of the accident but ceased to be when Beech fixed the wings. This analysis, however, is more metaphysical than practical.

3. Outside of Wisconsin, a South Carolina case construing the phrase "all reasonable expenses incurred" concluded that a plaintiff who received free medical treatment for an injury and also sought to recover payments under an insurance policy was not entitled to coverage because he had not incurred any expenses. *Gordon v. Fidelity and Casualty Co. of New York*, 238 S.C. 438, 120 S.E.2d 509, 512–13 (1961). C & S's policy refers to "costs" instead of "expenses" and does not include the term "incurred," but the two policies' scope of coverage seems coextensive.

repair the wings is not fairly deemed a "cost of repair" to C & S.

■ Even if, as the district court found, the policy language was ambiguous, the district court properly denied summary judgment based on *Kopp v. Home Mutual Ins. Co.*, 6 Wis.2d 53, 94 N.W.2d 224 (1959), because Beech replaced the wing assemblies as a third party volunteer. *Kopp* held that

> the unreasonable result should be avoided of so construing ... defendant's policy as to permit the injured person to recover for ... services supplied to him by some third-party volunteer without cost or personal liability to pay therefor on the part of such injured person.

6 Wis.2d at 57–58, 94 N.W.2d 224. The *Kopp* court further noted that the injured person should, however, be permitted to recover under the policy in situations where the insured "pays a consideration to have the expense ... paid" without liability to himself. 6 Wis.2d at 58, 94 N.W.2d 224.

C & S's contention that Beech's replacement of the wing assemblies was to discharge its moral obligation to assure that its product met its own standards, and that that moral obligation constituted sufficient consideration, is unpersuasive. Moreover, the issue is not whether Beech provided consideration, but whether Beech received consideration from C & S. In *Kopp*, recovery was allowed because the plaintiff had paid to be covered under a Blue Cross plan and another insurance policy: he had paid consideration to Blue Cross and thus Blue Cross was not a third-party volunteer payor. 6 Wis.2d at 56, 94 N.W.2d 224. The case before us is different. Beech was under no obligation—at least none supported by consideration—to replace the wing assemblies. Thus, even if the policy language were ambiguous, the district court appropriately refused to allow coverage when a third-party volunteer supplied the services without cost.

## II.

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of U.S. Fire.